Our next case for argument is 22-2078 United States Steel Corporation v. United States. Ms. Shulman, please proceed. Thank you. And may it please the court, my name is Sarah Shulman on behalf of United States Steel Corporation. And today, I would like to make very clear that based on the underlying record, the U.S. importer should have been charged a delivered duty paid price. But by lowering the price for anti-dumping duties, the foreign producer assumed the expense of those duties. And that matters under the law. The regulation asks, did the producer reimburse the importer, even an affiliated importer? And that is the transaction at issue under the reimbursement regulation. Producer and or exporter and importer. And that makes sense given the rationale behind the reimbursement regulation. As this court recognized in Apex Exports, the rationale behind the reimbursement regulation is to discourage exporters or producers from assuming. But what is your evidence that there was, in fact, a reimbursement because there's nothing in the supply agreement that suggests the transfer price between AIS and BSA. And the agreement only sets forth the formula price between BSA and Steelscape. I don't see how that doesn't undermine your argument. I'm wondering where is your evidence of a reimbursement? So our evidence of reimbursement is based on actually the terms of sale for this transaction, which were delivered duty paid, which I believe you can see in the supply agreement under Article 5.2 at Confidential Appendix 2078. But notwithstanding the supply agreement, you can also see that the company itself reported to Commerce the terms of sale to its U.S. importer. And where on 2078 is the language that you'd like me to look at? It's under Article 5.2, and given that this is a confidential document, I don't know how much more I can say in open court. Well, can you give us... Do you mean 5.1 or 5.2? 5.2 says shipping. Yes, and... Do you mean shipping? Yes. Because the terms of sale, which delivered duty paid is, assigns various responsibilities in a transaction... We'll have that document with you. I think you need to look at it, because I really don't think you want us looking at 5.2, and I don't want to completely... I don't want you to walk out of here later and be like, oh my god, I want 4.2. So I want you to make sure you get to put your argument on the record. So if you don't... Do you have it? I can get it, but I can also point you to a different place on the underlying record. You think this place is important. Don't you want me to know where it is? Yes. One moment, please. Okay, how long is it going to take? Here, just take mine. So sorry. There you go. Just tell me... Make sure it's 5.2, because that's what I just circled. I don't think it is. I don't think 5.2 is what you mean. So just to clarify, delivered duty paid is often abbreviated as DDP, and when a sale is based on delivered duty paid basis, that means that has various ramifications for that transaction. Separate and apart from the actual price of the good, it assigns responsibility for things like freight and insurance, but specifically here, it tells us that the invoice price should include an amount for anti-dumping duties. But... But I'm still a little confused as to... All that says to me is that it was delivered duty paid, but it doesn't... So let me just back up, and maybe I misunderstand what the transaction here was, but I thought that there was an agreement between Steelscape and BSA that the price would... That Steelscape would pay BSA would be the price of whatever plus the duties. Is that right? That is partially correct. Steelscape, which is the U.S. importer's customer, is a party to this agreement. However, it is our position that this... Wait. So what's wrong with that? You said it's partially correct. So Steelscape, the ultimate customer in this case of the importer, was paying a price that was for better or... I don't want to get into the details if I'm being inaccurate, but basically the price plus the anti-dumping duties. That is what the record shows? That's what they gave to BSA. And then BSA turned around and subtracted the amount attributable to the anti-dumping duties and said the entry price is the price minus the anti-dumping duties. And so that's what they entered at. They're the importer. They're the ones doing the entering. And then they paid to customs the amount of the anti-dumping duties. Is that all accurate? That is all accurate. So, okay. I just want to... I'll let you go on, but I want to understand where we are here. So that is the importer entering at a price that doesn't include anti-dumping duties. And it is paying anti-dumping duties to customs that it received from a U.S. customer. How does that reflect the exporter reimbursing the importer for anti-dumping duties? It absolutely doesn't. And that is our point, because it is not the entered value or even the price to the U.S. importer's customer that reflects reimbursement. It is rather the acting as the U.S. importer. That does happen, but here the U.S. importer, while an affiliate, is a distinct entity. So there was a transaction there. So where does the record show that the price invoiced by AIS to BSA? So we can see on the record where Blue Scope reports the terms of sale for that transaction. Is it just that it was delivered duty paid? Yes. And delivered duty paid means that the invoice price should include an amount for anti-dumping duties. I mean, if that's all there were, you might have a better argument. But when you have the details of the financial transactions between the importer and its customer, and it shows that the U.S. side paid the anti-dumping duties, and there's no indication that either the importer or the customer got reimbursed from the regulation, it doesn't ask what the U.S. importer's price to its customer was. It also doesn't ask what the U.S. importer declares to customs. It asks, did the exporter assume the cost of the duties? But you want BSA to pay the cost of duties twice, once to customs and once to AIS. Frankly, Your Honor, it's the company's prerogative to structure its sale however it wants. And here there was a sale between a producer and a U.S. importer. And they chose to structure that sale on a delivered duty paid basis. If they did not want the U.S. importer to be invoiced a price that includes an amount for anti-dumping duties, it should not have been the terms of sale. But we know that it is. And I would point Your Honors to the appendix at 3156, to the end of the response on that page, as well as the first reports its terms of sale to its importer, Blue Scope Steel Americas or BSA. I'm just still confused, though, because given the way the transaction worked between Steelscape and BSA, the anti-dumping duties seem to have come from the importer side. The reimbursement regulation is meant to discourage the exporter from assuming the duties. And so I like to think of it in that context. Well, yeah, absolutely. But if there was any indication that the exporter had given an amount of money to BSA besides saying that this is duty paid, I mean, that may just be an inaccurate description. It may have meant other kinds of duties and not anti-dumping duties. Well, hypothetically, Your Honor, if the transaction between the- Sorry, I'm interrupting again, but I want to know, is there anything on the record that actually shows what the actual invoice price between AIS and BSA is? I don't know if this hypothetical works. And I always hate to use hypotheticals in dumping cases because it's so complex, and the economics are so complex, and I always mess them up. So if it doesn't work, just tell me. But let's say that Steelscape agreed to pay BSA $80, and that 5% of that's attributable to anti-dumping duties, and 75% is the rest. And so BSA enters the goods at $75, assesses the $5 anti-dumping duties, and gives that to customs. So the $5 is the anti-dumping duties. Is there any- and if that's accurate in this case, it seems like that's what happened. Where would that- if we thought that AIS was reimbursing BSA for that $5, where would we see that in this record? So I would like to answer Your Honor's time. I realize that I've gone over my allocated time. We would see that in the record with regard to the transaction between the exporter or producer in this situation and the U.S. importer, hypothetically, to follow your lead, if the foreign producer charged its importer a delivered duty price. And so that invoice would include the duties. How would what the U.S. importer's customer pay negate that check? It wouldn't. The exporter would still be out that money. But we don't have any record of the foreign producer or exporter writing that check. All we have, unless you have something else, we have that really hard to understand shipping statement about delivered duties paid, which I think you're trying to say is injury practice to include all duties. But given the facts of this case, maybe it didn't. I don't understand why you would read that general statement to override the specific facts here. Well, we know that delivered duty paid means that any amount of anti-dumping duties should be included in the invoice. And you can see that on the record in the customs ruling that we provided as the last addendum to our opening brief. But we don't actually have an invoice from the exporter to the importer showing a specific price that included anti-dumping duties. And that's exactly the problem because we know that this sale was structured as DEDP. That's what the company told us. That's what the record shows. But they didn't charge the U.S. importer a delivered duty paid price. And that is exactly how the exporter assumed the cost of those duties. And that is the reimbursement. Unless there are any further questions, I would like to save the rest of my time for a bubble. Yes, that's great. Ms. Bond, please proceed. May it please the court. I'll start with where U.S. Steel started, the DDP price. The core misunderstanding there is that the DDP price in 5.2 of the supply agreement is the price to Steelscape like the rest of the supply agreement. So the supply agreement establishes a regime for Steelscape to make purchase orders. And it establishes a formula price for Steelscape. And in 5.2, it establishes that the price to Steelscape is a delivered duty paid price. So it covers the cost not only of the underlying steel merchandise, but also the cost of transporting the merchandise from Australia to the United States and including the clearance of customs and the payment of anti-dumping duties. That's all about just BSA to Steelscape. Exactly. And so all of that involving the payment that is to Steelscape is... It does involve the payment of duties because that's where the duties are paid. Exactly. And it's... And those too. Precisely. And it's no surprise that the sale to the U.S. customer, the sale by the importer to the U.S. customer would be that duty inclusive price. And that actually shows that the purpose of the reimbursement regulation is being satisfied here because the importer, Blue Scope Americas, paid the anti-dumping duties and it passed on those costs to its customer, Steelscape. Well, it makes me nervous when someone says the purpose of the regulation is being satisfied. Does that mean the letter of the regulation is not satisfied? Both are being satisfied. But I mentioned purpose only because with the complex fax it issue, it is helpful to understand that the underlying goal of the regulation is to... I won't speak about purpose any longer. But the question is, does substantial evidence support Commerce's finding that no reimbursement occurred here? And the answer there is yes, because Commerce explained, for example, at appendix page 4103 in the final analysis memorandum, that the formula price, that's the price that has been discussed and that's the duty delivery or delivered duty paid price. That is to Steelscape. And because that is the whole crux of U.S. Steel's argument, so the fact that there are components then taken out of that price to reach the entry price is no surprise and it's perfectly normal. Thank you for bringing me back to the standard of review. So even if I thought that the word, the DDP moniker in 5.2 created some question about something that was something that would only be reviewed for substantial evidence, Commerce looked at it, they decided that. Exactly, Your Honor. And the supply agreement itself, as well as the invoices, provide that substantial evidence in support of Commerce's finding that the formula price in the supply agreement is to Steelscape and its resulting findings that Blue Scope Americas paid the anti-dumping duties and passed those costs on to its customers. Is I correct that if we were to find for the appellant, it would result in double duties, basically paid to Customs and paid to AIS? That's right. And in the appendix, I apologize, at appendix page 2110, there's a breakdown of all the different component pieces in the formula price that is essentially reverse engineered to assess the entry value as well as the invoice price to Blue Scope Americas. And that demonstrates that each of the components is being paid. So not only does Blue Scope Americas pay the entry value, they pay the shipping costs, they pay the anti-dumping duties to the United States, and then there's an additional commission on top of that, and that added together results in the formula price. I have a sort of side hustle type question for you. Why is this case here? And what I mean by that is most of these Customs cases are about classification, and that matters, right, because there's going to be future imports. This seems like such a narrowly tailored case. I'm kind of surprised to see it on appeal. Is it, is there just a huge amount of money impacted here by the concept of what would be the double payment if it were required? Well, there are other administrative reviews that follow that share the same issue, so they may have cascading. This contract and the way, even though this seems like an unusual set of facts, you're saying there are several other cases with similarly set facts such that this matters? Yes, and there's one pending at the Court of International Trade right now, and there, and this is an ongoing anti-dumping duty order, so there are rolling administrative, or opportunity for administrative reviews of this issue. Can you help me out on that? Yes, in preparing for the argument, in looking to 3156 to 3158, we also struggled to read that consistently with the source documents, but I think that it's telling that U.S. Steel's primary argument in its reply brief, and here before the Court, is focusing on this questionnaire response, which really is Blue Scope characterizing the source documents, and it's not looking back to the source documents themselves, which are the supply agreement and the invoice documents. Governments view that Blue Scope just maybe erroneously described the underlying documents in its response to the government? Well, I think there's a few different ways to read this response. One possible way is that, as I just mentioned, when you look to the different component parts of the price that Blue Scope America is paid, it does include all the component parts that would make up a delivered duty paid price, because it covers the entry value, it covers the anti-dumping duties, and it covers the cost of shipping, and understanding established by the supply agreement, which is the delivered duty paid price for Steelscape. And then, for example, if the Court, this is also BPI, so we can't get into the specific numbers, but if the Court looked at Appendix Page 219, that's an example of an invoice to Blue Scope America, and there's different labels of how the shipment is treated, and it's not DDP. So that is more underlying evidence in tension with the response Blue Scope gave? Right, but it is substantial evidence in support of Commerce's finding. So even if, that was going to be my next question, even if we somehow put some weight, if that were for us to do, on the response from Blue Scope, you would say there's still substantial evidence left to support Commerce? Yes, and looking to, again, the supply agreement, which established it, which is clear that it's all about purchase orders to Steelscape, the invoices, including at Appendix Pages 149 to 332, and I especially highlight Appendix Pages 219 and 243. I believe 242 to 243 are the entry documents, and they align with the different relevant prices in that invoice, and as well as Appendix Page 2110, which has this breakdown and pulling out the different component parts from the formula price and reverse engineering it to the price paid by BSA. All of those provide substantial evidence in support of Commerce's findings, and the Court of International Trade did explain the transfer pricing in a simple way at Appendix Page 15, and the Court of International Trade found substantial evidence in support of Commerce's finding. If there are no further questions, we ask the Court to affirm. Thank you very much, Ms. Bond. Mr. Porter, you have some time. I'd like to ask that you focus your argument on anything that you have to add that is different from, or unless you really have a different opinion than what was already offered. No. May it please the Court, I believe the Government Council has done a very good job in explaining why the determination should be affirmed, and if I got 30 seconds, and I believe that both Judge Hughes and, Your Honor, Chief Judge Moore crystallized it, okay? This is a evidence of reimbursement, and Judge Hughes said your entire case is based on this DDP term, which is in an agreement between BSA and Steelscape. Okay, just to be clear, you're getting way too emotional about the trade case. That's just not permitted. I apologize. 35 years doing trade cases, Your Honor, I get a little, you know, it's... You must be excellent at cocktail parties. Exactly. People gravitate to me. Thank you, Your Honor. I'm all done. Okay, thank you, Counsel. Ms. Schulman, you have some rebuttal time. Thank you, Your Honor. Your Honor mentioned the letter of the regulation, and I would like to turn to that. The regulation here, 19 CFR 351-402-F, only references three parties, the producer, exporter, and importer. Those are the relevant parties here, and the record establishes that the transaction between the foreign producer and the importer was meant to include anti-dumping duties in the invoice price, not only because Blue Scope said so at Appendix 3156 and 3157, but also because the supply agreement did, in fact, apply to that transaction, and you can see that on the record because they provided the supply agreement in response to a question as to how they priced their goods to their importer. You can see that at Appendix 114 and Appendix 1458, and I believe it was Judge Stark who asked previously, is there evidence on the record that the price to the importer was explicitly lowered for anti-dumping duties, and I would say, yes, there is. There is on the record. It's the confidential record at Appendix 2110, but I would encourage Your Honors to look at that page and see what they did with the anti-dumping duties and whether they were included in the invoice price or not. But Commerce didn't, in fact, engage with any of these facts. In the final analysis memo that opposing counsel referenced, Commerce focuses on entered value, and the problem here is entered value should not have been the same as invoice price because the company didn't do what Customs says to do in a DDP sale, which is include the anti-dumping duties in the invoice price and exclude them from entered value. And so by excluding the anti-dumping duties from the invoice price, the foreign producer assumed the expense of those duties, which is reimbursement under the law. Unless there are any further questions, I will close there. I want to thank all counsel. Also, you did a very nice job. Thank you. This case is taken under submission.